IVAN K. MATHEW (SBN 011610)
SUSAN TURNER MATHEW (SBN 012916)
**MATHEW & ASSOCIATES**
6245 N. 24th Parkway, Suite 207
Phoenix, Arizona 85016
Telephone: (602) 254-8088
ikmathew@mathewlaw.com
satmathew@mathewlaw.com

Attorneys for Defendant *James Norton*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>James Franklin Norton, *et al.*,<br><br>Defendants. | No. CR-17-00713-PHX-JJT (JZB)<br><br>**MOTION TO PRECLUDE INTRODUCTION OF CONFIDENTIAL MARITAL COMMUNICATIONS BY DEFENDANT NORTON**<br><br>**(**Assigned to the Hon. John J. Tuchi)<br><br>(*Oral argument requested*) |

James Norton, represented by Ivan K. Mathew, respectfully requests that the Court preclude confidential marital communications allegedly between Jim Norton and Kelly Norton ("Mrs. Norton") pursuant to Fed. R. Evid. Rule 501 (marital privilege). With certain exceptions, communications between a husband and wife are privileged. *Trammel v. California*, 445 U.S. 40, 47 (1980).

**SUMMARY**

The government met with Mrs. Norton on October 28, 2016, March 21, 2017, May 2, 2017, and May 17, 2017. The government was aware of the existence of the marital privilege during these interviews.

The marital communications privilege "protects from disclosure private

1

communications between spouses." *U.S. v. Griffin*, 440 F.3d 1138, 1143-44 (9th Cir. 2006). The privilege may be invoked by the non-testifying spouse. *United States v. Marashi*, 913 F.2d 724, 729 (9th Cir. 1990). However, "the marital communications privilege does not apply to statements made in furtherance of *joint* criminal activity." Id., 913 F.2d at 731 (emphasis added).

### 1. The Marital Communication Privilege

Rule 501 provides in pertinent part: "[T]he privilege of a witness…shall be governed by the principles of the common law as they may be interpreted by the courts of the United States…" Fed. R. Evid. In *Marashi*, *supra*, 913 F.2d at 729-730, the Ninth Circuit explained the marital communications privilege as follows: The confines of the marital communications privilege are easy to describe. "First, the privilege extends to words or acts intended as communication to the other spouse…Second, it covers only those communications made during a valid marriage…Third, the privilege applies only to those marital communications which are confidential" *i.e.*, not made or likely to be heard by third parties. *Id.*

The privilege does not extend to "statements made in furtherance of *joint* criminal activity." *Marashi*, *supra*, 913 F.2d at 731. In deciding *United States v. Ramos-Oseguera* 120 F.3d 1028, 1042, (9th Cir. 1997), *over ruled in part on other grounds*, *United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000), the Ninth Circuit held: "This circuit has held that 'the marital communications privilege does not apply to communications having to do with present or future crimes *in which both spouses are participants*.'" (quoting *Marashi*, *supra*, 913 F.2d at 730). The privilege exists "'to protect the integrity of marriages and ensure that spouses freely communicate with one another.'" *Griffin*, *supra*, 440 F.3d at 1143 (quoting *United States v. White*, 974 F.2d 1135, 1138 (9th Cir. 1990)). The marital communications privilege protects from disclosure the private communications between spouses. *Id.* "Communications between the spouses, privately made, are generally assumed to have been intended to be confidential…" *Wolfle v. United States*, 291 U.S. 7, 14 (1934); *see also Pereira v. United States*, 347 U.S. 1, 6 (1954) ("martial communications are presumed to be

2

confidential").

**2. Facts**

The indictment covers the period 2011 to 2013.  During this period, Jim Norton and Kelly Norton were married. In the fall of 2016, Arizona Corporation Commissioner Robert Burns suggested to the FBI that they should interview Kelly Norton.[1]  On or about March 21, 2017, May 2, 2017, May 17, 2017 and October 28, 2016, Kelly Norton was interviewed by the FBI.  They knew full well she was married to Mr. Norton at the time.

**a.  Interview of Kelly Norton, March 21, 2017**

At the very onset of the March 21, 2017, interview, which was attended by prosecutors, the government acknowledged the issue of the marital privilege. *See* following discussion and Exhibit 1, attached hereto (excerpt of Kelly Norton interview, March 21, 2017, Pages 31, 33, 35-36).

| | |
|---|---|
| Speaker 1: | Yeah, KMB Consulting. |
| Frank Galati: | Okay. |
| Speaker 1: | And so I had a separate checking account, so he gave me $6,000 a month.  And I did some other things for George, and then he told me that I needed to pay Sheri $3500 a month. |
| Kelly Norton: | Okay. |
| | And I was upset because I'm perfectly capable [00:46:00] of doing whatever work I thought it was that, I didn't realize at first what was going on, so I said, why am I hiring Sheri when I am perfectly capable of doing this?  And I had started my own little consulting business, right, so why am I having to give her half my money?  You know? |

---

[1] Mr. Robert Burns is a rogue commissioner whose lawsuit against his fellow commissioners recently culminated in the Superior Court of Arizona finding that Mr. Burns did not have the right to unilaterally issue subpoenas to a utility company despite Mr. Burns' knowledge that the subpoenas had been disapproved by the majority of the other commissioners.  The Superior Court of Arizona dismissed Mr. Burns' lawsuit, which he filed against his fellow commissioners personally.  Ironically, the government unilaterally issued subpoenas in this case.

| | | |
|---|---|---|
| | | So, I was not happy about it, and then, and then Jim, which I think it's spousal privilege or whatever, he and I had a discussion, and he told me that Gary- |
| | Ms. Shefveland: | Okay, wait, wait a minute. Wait a minute. If it, if this is a spousal privilege, we can't use it. Was this conversation [00:46:30] between you and Jim private? |
| | Kelly Norton: | Yeah. |
| | Ms. Shefveland: | Just have to deal with that at another point, we'll have to skip over that. |
| | Kelly Norton: | Okay. |
| | Frank Galati: | So, as a result of a conversation you had with Jim, or did you do something with Sheri? |
| | Kelly Norton: | I hired her. |
| | Frank Galati: | Could you tell us about times when either George or George and Jim were giving you instructions? Because obviously, uh, the spousal privilege would not apply in George's presence. |
| | Kelly Norton: | George was going to put up the money, and then we were going to buy it so that Gary and his son could run it to help Gary and I threw an absolute fit when he did that. Because it was like $400,000.00. I'm like, "No way. I'm not doing that." So far as I know, it never happened. (laughs) But [00:53:00] it didn't happen with my name on it, so but it was going to be Jim and I buying it with George's money. |
| | Marilyn: | And-and it was your understanding that-that Gary was a part of those discussions? |
| | Kelly Norton: | Absolutely. |
| | Marilyn: | And part of the plan and-and that is something he was wanting. |
| | Kelly Norton: | Yeah, well, Gary sent the email with here's the piece of land. He had made an offer on it, and the offer had his and Jim's name on it. |

At a hearing, Defendant Norton will show that the scenario is false. There was no such conversation including George Johnson.

### b. Interview of Kelly Norton, May 2, 2017

The marital privilege issue came up again during the interview of Mrs. Norton on

4

May 2, 2017. See below discussion and Exhibit 2 hereto (excerpt of Kelly Norton interview, May 2, 2017, Pages 66 and 72).

| | | |
|---|---|---|
| Fred Battista: | | And were you following this based upon [01:23:30] instructions that you had received? You, were you taking these actions based upon conversations that you'd had with Jim? |
| Kelly Norton: | | Yes. |
| Fred Battista: | | All right. |
| Kelly Norton: | | Which is all spousal privilege right? |
| Fred Battista: | | Well we'll talk to your attorney about that. |
| Kelly Norton: | | Okay. |
| Ms. Shefveland: | | Yeah that's, they have to talk about that. |
| Kelly Norton: | | All right. |
| Ms. Shefveland: | | There's a specific um- |
| Fred Battista: | | Yeah I. |
| Ms. Shefveland: | | Situation there. |
| Fred Battista: | | Yeah we'll talk to your attorney. |
| Kelly Norton: | | Okay. All right. |
| Ms. Shefveland: | | Thank you, and I know we're, sometimes we ask questions three different ways. |
| Kelly Norton: | | That's okay. |
| Ms. Shefveland: | | But, but, okay good, I appreciate you understanding, [01:24:00] just kinda how uh things work. Especially in federal cases, so, we already discussed this uh, social security number one. |
| Fred Battista: | | Okay. |
| Kelly Norton: | | To pass on to Jim. We were in Durango on vacation. |
| Ms. Shefveland: | | Mm-hmm (affirmative), oh okay. |
| Fred Battista: | | Why was he, why was he emailing you? |
| Kelly Norton: | | Because, and I don't know, this might be part of this spousal privilege. |
| Fred Battista: | | Okay. |
| Kelly Norton: | | What Jim told me was, that George was gonna put up |

5

|   |   |
|---|---|
| | the money, because I threw a total fit when I saw that, that Jim was gonna buy this [01:31:30] land for Gary, and Jim said don't worry, George is putting up the money. Um, and I put my foot down. I mean I have my real estate license, you know, you can't just do stuff like that, when you have your real estate license you have to follow all the rules and everything, and, so I'm like, I would've had to know about it and uh, and so originally the document I think had Gary's and Jim's name on it. |

### c. Interview of Kelly Norton, May 17, 2017

The marital privilege issue came up again during the interview of Kelly Norton on May 17, 2017. See discussion below and Exhibit 3 hereto (excerpt of Kelly Norton interview, May 17, 2017, Page 2).

| | |
|---|---|
| Fred Battista: | Okay. Well thanks, thanks for coming again, Kelly. We appreciate it. Um, you know, we, I had an opportunity to talk to your attorney, Doug, and, um, we [00:00:30] just, there's one matter that we hadn't covered before that we just wanted to cover today and that's, uh, conversations that you had with Jim Norton a-, at the time that you were married, but we will limit those conversations to, uh, conversations that, that you had with respect to, um, benefiting Gary and [Sherry 00:00:56] Pierce, uh, through, uh, financial [00:01:00] benefits or other benefits, uh, being funneled through, um, Jim Norton from, uh, George Johnson. So, that's the, that's basically the scope of, of what we wanna talk about. |
| | Obviously, in the past, we have talked about this in a limited fashion, but, um, we believe that because of the, the nature of what was happening that there's, uh, an exception to the, uh, marital privilege. [00:01:30] And, uh, that, that you can tell us what, um, about those conversations and we're not gonna stray out, outside of that narrow band of, of conversations. |
| Kelly Norton: | Okay. |
| Ms. Shefveland: | Yeah, wanna cover the, the other issue now or- |
| Fred Battista: | Well- |
| Ms. Shefveland: | At the end? |

| | |
|---|---|
| Fred Battista: | We'll do that at the end. |
| Ms. Shefveland: | At the end, okay. |

### 3. The Mesa Real Estate Transaction That Did Not Occur

The government clearly acknowledged the existence of the marital communications privilege. Nonetheless, it had at least four interviews with Mrs. Norton.

The Ninth Circuit has held that the marital privilege is only applicable if both husband and wife are participants in the crime. In this particular circumstance, Kelly Norton states that she did not want to be part of an alleged crime of purchasing land with Commissioner Burns. Kelly Norton further states that Jim Norton did not purchase land with Gary Pierce. Thus, neither husband nor wife were participants in a criminal transaction. The communications about this transaction are covered by the marital privilege.

### 4. The Political Consulting Work Done by Jim Norton and Sherry Pierce

Any alleged statements made by Jim Norton to Kelly Norton about the political consulting work done by Sherry Pierce is also entitled to the protection of the marital privilege. Jim Norton during the relevant periods worked for R&R Partners, a well-known lobbying and public relations firm. Kelly Norton had a contract with R&R. Kelly Norton entered into a written contractual agreement to assist with projects as needed. Sherry Pierce is entitled to work as a political consultant and get paid. She is a moving force in the East Valley political circles. Jim Norton, Kelly Norton and Mrs. Pierce assisted George Johnson in trying to mobilize the support of voters in the East Valley. This is protected speech. U.S. Constitution Amendment 1; *Citizens United v. Federal Election Com'n,* 558 US 310; 130 S. Ct. 876, 350, (2010) The Supreme Court held that independent expenditures do not give rise to corruption or an appearance of corruption. *Id.* Ingratiation and access in any event, are not corruption. *Id.* at 360. *citing Buckley v. Vallejo*, 424 U.S. 1, 45-47 (1976). This is not a violation of law. 18 U.S.C. § 666(c) ("This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed…"). Furthermore, that fact Sherry Pierce (or for that matter, Gary Pierce) merely received benefits for their work is not a crime. The government has not shown that any payments to Sherry Pierce are in

1  violation of federal law.

2  Defendants are immune from prosecution for exercising First Amendment rights
3  which are protected. They are immune from prosecution for Political speech. Jim Norton,
4  Kelly Norton and Sherry Pierce were assisting George Johnson on marshalling support to
5  maintain parts of the East Valley as unincorporated towns. In *United States v. Kincaid-*
6  *Chauncey*, the Ninth Circuit held lobbying activities are not subject to bribery charges.
7  *United States v. Kincaid-Chauncey*, 556 F.3d 923, 943 (9th Cir. 2009). Jim Norton is one
8  of the preeminent lobbyist in Arizona. In addition, bona fide compensation is not subject to
9  bribery charges as a matter of law. 18 U.S.C. § 666(c).

10  The government has not laid a foundation to show a crime which would allow Kelly
11  Norton's testimony to be admitted about any statements made to her by Jim Norton. Seeking
12  the election of officials who have similar political views is protected by the First
13  Amendment. Jim Norton's alleged statements about the work performed for Mr. Johnson's
14  company must be suppressed.

15  **5. The Marital Privilege Belongs to Jim Norton**

16  Jim Norton exercises his marital communication privilege. This privilege belongs to
17  Mr. Norton. Despite numerous acknowledgments of the marital privilege issue, the
18  government proceeded to trample over the privilege and, thus, Mr. Norton's rights. The
19  government seeking input from the unindicted co-conspirator's attorney is puzzling and
20  troubling.

21  **CONCLUSION**

22  Defendant exercises his marital communication privilege. The statements allegedly
23  made by Jim Norton to his wife Kelly Norton outside the presence of third parties should not
24  be introduced at the trial in this matter as it would violate the marital privilege. Fed. R. Evid.
25  Rule 501; *Trammel v. California*, 445 U.S. 40, 47 (1980).

26  **EXCLUDABLE DELAY**

27  It is anticipated that excludable delay pursuant to 18 U.S.C. § 3161(a)(7)(A) may
28  occur as a result of this Motion.

8

RESPECTFULLY SUBMITTED this 22nd day of March, 2018.

MATHEW & ASSOCIATES

By: /s/ Ivan K. Mathew
     Ivan K. Mathew
     Attorneys for *Defendant James Norton*

ORIGINAL e-filed and COPY of the foregoing served via the CM/ECF System or U.S. Mail on March 22, 2018, to:

Frederick A. Battista, Assistant U.S. Attorney
Frank T. Galati, Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004

Patricia A. Gitre
Patricia A. Gitre, P.L.C.
801 N 1st Avenue
Phoenix, AZ 85003
Attorneys for *Defendant Gary L. Pierce*

Woodrow Thompson
Hannah H. Porter
Gallagher & Kennedy, P.A.
2727 East Camelback Rd
Phoenix, AZ 85016-9225
Attorneys for *Defendant George H. Johnson*

Ashley D. Adams
Ashley D. Adams, P.L.C.
8245 N. 85th Way
Scottsdale, AZ 85258
Attorneys for *Defendant Gary A. Pierce*

/s/ DD Waldron