IVAN K. MATHEW (SBN 011610)
SUSAN TURNER MATHEW (SBN 012916)

**MATHEW & ASSOCIATES**
6245 N. 24th Parkway, Suite 207
Phoenix, Arizona 85016
Telephone:  (602) 254-8088
ikmathew@mathewlaw.com
satmathew@mathewlaw.com

Attorneys for Defendant *James Norton*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES FRANKLIN NORTON, *et al.*,<br><br>Defendants. | **No. CR-17-00713-PHX-JJT (JZB)**<br><br>**MOTION FOR BILL OF PARTICULARS**<br><br>*(Oral Argument Requested)* |

Pursuant to Fed. R. Crim. P. Rule 7(f), Defendants James Franklin Norton ("Norton"), Gary Pierce ("Mr. Pierce"), George Johnson ("Johnson"), and Sherry Pierce ("Mrs. Pierce") (collectively "Defendants") move for a Motion for Bill of Particulars.  At present, Defendants do not have essential information regarding the alleged conspiracy and several of the other Counts in the Indictment.  A bill of particulars is necessary to allow Defendants to prepare an adequate defense and avoid prejudicial surprise at trial.

### THE COUNTS ALLEGED

On May 23, 2017, the United States filed a criminal Indictment ("Indictment") (Doc. 1) alleging that Defendants, along with an unindicted co-conspirator, formed a conspiracy by which Mr. and Mrs. Pierce would receive money in exchange for the vote of Mr. Pierce,

a Commissioner on the Arizona Corporation Commission ("ACC"), on ACC matters affecting Johnson Utilities, LLC ("Johnson Utilities"), including, *inter alia*, a vote to amend an ACC decision affecting Johnson Utilities' rates and a vote allowing utilities organized as limited liability companies and/or subchapter S corporations to include income taxes as part of their rate base.  Doc. 1, ¶¶ 15-16.

Count One of the Indictment (Conspiracy) charges the Defendants with violating 18 U.S.C. § 371; Count Two (Federal Program Bribery) charges the Defendants with violating 18 U.S.C. § 666(a)(1)(B); Count Three (Honest Services Mail Fraud) alleges a violation of 18 U.S.C. §§ 1341 and 1346; and Counts Four through Eight (Honest Services Wire Fraud) allege violations of 18 U.S.C. §§ 1343 and 1346. Doc. 1.  The Defendants have pleaded not guilty to all charges. Doc. 21.

The Indictment fails to include material information necessary for the Defendants to adequately defend against the government's charges.  For example, the Indictment alleges that the conspiracy began "by no later than in or about August 2011." Doc. 1, ¶ 14.  The Indictment, however, provides no specific information supporting this allegation such as any alleged meeting(s) and/or communications.  *Id.*  Indeed, the Indictment states that the first alleged meeting between some of the co-conspirators is a September 28, 2011, dinner meeting (*Id.*, ¶ 25), which took place weeks **after** one of the votes by Mr.  Pierce that was allegedly obtained by the bribery scheme.  Without any charges to support the August 2011 conspiracy date, Defendants still do not understand how the government intends to prove the existence of a conspiracy at the time of the ACC vote on September 6, 2011 (or earlier).

In addition, Count Two alleges two separate fact patterns to support one charge of bribery – one involving the compensation received by Mrs. Pierce and the other involving a land deal. Doc. 1, ¶ 57.  As it is currently written, Count Two is duplicitous and presents a serious risk of a non-unanimous jury verdict.

Moreover, the substantive Counts (Counts 2-8) include matters which are more than five years from the May 23, 2017, the indictment filing date (Doc. 1, ¶¶ 57, 59, 62), leaving the Defendants to guess as to whether these acts are used merely to tell a story or if the government intends to prosecute the Defendants for these actions.

As this Indictment is at its core a bribery indictment involving honest services fraud, further information is necessary as to all of the official actions that form a part of the alleged *quid pro quo*.  *See McDonnell v. United States,* 579 U.S.____, 136 S. Ct. 2355, 2371 (2016).

## ARGUMENT

### I.   Defendants have a Constitutional Right to Adequate Notice of the Charges Alleged Against Them.

A person charged with a crime has the right to be adequately informed of the nature of the charges against him.  "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge…[these] are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."  *Cole v. Arkansas*, 333 U.S. 196, 201 (1948).  The Sixth Amendment specifically states that "[i]n all criminal prosecutions, the accused shall enjoy the right…to be informed of the nature and cause of the accusation..." U.S. Const., amend. VI.

Fed. R. Crim. P. Rule 7(c)(1) requires that an indictment set forth the charges in

"plain, concise, and definite written statement" describing "the essential facts constituting the offense charged." *Id*. While the statutory language "may be used in the general description of the offense, it must be accompanied with such a statement of facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)

Where an indictment fails to provide adequate notice, a bill of particulars is appropriate in order to provide the necessary clarity required to prepare a defense. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). The bill of particulars "is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *Id*. To determine whether a bill of particulars is necessary, the court looks to see if the defendant has received adequate notice of the charges from the indictment and disclosures by the government. *Id*.

## II.    The Indictment Fails to Provide Adequate Information about the Charged Conspiracy.

Courts have recognized that a bill of particulars is appropriate where the indictment does not provide sufficient information as to when each defendant joined the alleged conspiracy and/or when the information in the indictment does not support the charged beginning date of the conspiracy. For example, in *United States v. Bazezew*, 783 F. Supp. 2d 160, 168–69 (D.D.C. 2011), the indictment charged that the conspiracy began on September 3, 2009, but all of the charged overt acts took place a couple of weeks later. Because the indictment was devoid of any detail that the defendants did anything before the charged overt acts, the court held that the defendants could not adequately prepare for trial

without at least a description of any overt acts other than the ones included in the indictment and the approximate date of conversations between the purported co-conspirators that preceded the alleged beginning of the conspiracy.  *Id*.

Similarly, in *United States v. Ramirez*, 54 F. Supp. 2d 25, 30–31 (D.D.C. 1999), the court held that the defendants were entitled to a bill of particulars setting forth the dates of conversations between the co-conspirators not identified in the indictment and the approximate date on which each defendant allegedly joined the conspiracy.  This information, according to the court, was necessary "so that each defendant may understand the government's view of his alleged role in the conspiracy."  *Id*.; *see also United States v. O'Neal*, No. 3:08-CR-107, 2008 WL 5435575, at *3 (E.D. Tenn. Dec. 30, 2008) (ordering government to "provide approximate dates of involvement of the conspiracy" given that certain charges related to a narrow period of time within seven-year long charged conspiracy).

Here, the mismatch in the Indictment between the alleged starting date of the conspiracy and any meetings and/or conversations between the alleged co-conspirators demonstrates the need for a bill of particulars.  For example, the only Defendant alleged to have committed overt acts prior to September 28, 2011, is Mr. Pierce.  Specifically, the Indictment charges several "overt acts" undertaken by Mr. Pierce (and him alone) in August and September of 2011; while, the first meeting between Mr. and Mrs. Pierce, Norton and the unindicted co-conspirator is not alleged to have occurred until September 28, 2011. Doc. 1, ¶ 25.  Additionally, the Indictment fails to include <u>any alleged meeting and/or conversation between Defendant Johnson and any of the other co-conspirators</u>.  *Id*., *generally*.

5

Without additional information provided by a bill of particulars, Defendants are simply left in the dark as to whether there are other overt acts and/or meetings prior to the ones included in the Indictment and have no notice of the acts the government intends to rely upon to prove a conspiracy beginning in August 2011.  As to Defendant Johnson, there is no information whatsoever regarding alleged meetings and/or agreements reached with the other co-conspirators; the Indictment simply fails to allege any fact showing when he allegedly entered the conspiracy.  Put simply, without additional information, Defendants cannot understand the theory of the government's case regarding the timeline of the alleged conspiracy.

For similar reasons, the government should also be required to disclose whether any of the Defendants are not alleged to be part of the full timeline of events supporting the conspiracy.  Here, the charged conspiracy runs from August 2011 to sometime in February 2013. Doc. 1, ¶ 14.  The last check issued to Mrs. Pierce for compensation for her services was in August 2012. Doc. 1, ¶¶ 35, 36.  The email regarding the purchase of property took place in December 2011. Doc. 1, ¶ 54.  There must be some temporal relationship for *quid pro quo. See McDonnell v. United States,* 579 U.S.____, 136 S. Ct. 2355, 2371 (2016).  The Defendants are entitled to know whether the government intends to charge each of the individuals with participation in the full length of the alleged conspiracy or for a shorter time period.

The discovery by water torture (up to disclosure No. 24) disclosed by the government to date (which is not yet complete) does not provide the missing information.  Not including the hours of video or tens of thousands of emails disclosed electronically, the government

has produced over 35,000 pages of documents.  And, despite there being three Protective Orders in this case, the government has redacted information from the documents it has produced.  Moreover, most of the discovery has nothing to do with the charged conspiracy but instead concerns other investigations or collateral matters.  So far as Defendants can tell, nothing in the discovery sheds light on any meetings between the co-conspirators concerning the alleged conspiracy prior to September 28, 2011.  Nor is there any information as to when each Defendant allegedly entered (or left) the conspiracy.

The impossibly large volume of material disclosed by the government supports the need for a bill of particulars.  "It is not enough, however, to simply assure Defendant or this Court that the necessary facts are found somewhere in the tens of thousands of pages of discovery materials."  *United States v. Muhammed*, No. CR-12-01793-PHX-DGC, 2013 WL 5200117, at *2 (D. Ariz. Sept. 16, 2013); *see also United States v. Savin,* No. 00 Cr. 45 (RWS), 2001 WL 243533, at *3 (S.D.N.Y. Mar. 7, 2001) (granting request for particulars about defendant's role in transactions, where defendant had "been provided with 100,000 pages of discovery," a "veritable mountain of documents" that the government would have forced the defendant "comb through" to "attempt to guess" which transactions, during a six-year period, were allegedly improper).  In this case, Defendants' constitutional rights should not be subject to finding the proverbial needle in a haystack in the tens of thousands of documents and hours of video disclosed by the government.

The timeline of the conspiracy and each Defendant's participation in the conspiracy is of critical importance.  For example, the Indictment details eight checks paid to Mrs. Pierce beginning in November 2011 and continuing through August 2, 2012, as part of the bribery

scheme.  Doc. 1, (Counts 4-8).  However, the Indictment goes on to allege that actions undertaken by Mr. Pierce several months before Mrs. Pierce's employment, as well as several months after the end of her employment, are part of the alleged bribery scheme. *Id*. at ¶¶ 20, 22, 23, 26, 55).  The Indictment fails to link the compensation paid to Mrs. Pierce with any material official action undertaken by Mr. Pierce - *i.e.* the Indictment fails to establish any *quid pro quo* between the checks paid to Mrs. Pierce and Mr. Pierce's official conduct relating to Johnson Utilities – the basis of the alleged conspiracy.

In *McDonnell*, *supra*, 136 S. Ct. at 2371, the Supreme Court held that there must be at least an agreement by the official "to perform an 'official actions' at the time of the alleged *quid pro quo*." Doc. 1, ¶¶ 15, 16,59, 62.  The agreement need not be explicit, but the evidence must at least show that the "public official received a thing of value knowing that it was given with the expectation that the official would perform an 'official act' in return."  *Id*. The word "material" is not used in the Indictment to describe "official actions."  Doc.1, ¶¶ 15 and 16.  To be a crime, the *quid pro* quo must be material.  *U.S. v. Milovanovich*, 678 F.3d 713, 726-27 (9th Cir. 2012).  The impact of *McDonnell* is demonstrated in the Second Circuit's recent decision in *United States v. Skelos*, 707 F. App'x. 733 (2nd Cir. 2017), (unpublished), wherein the court noted that because of the trial court's failure to properly narrow the wide-ranging scope of mail or wire fraud by honest services, the jury could have improperly convicted the defendants on a prohibited "theory." *Id* at 737.

Here, Counts Two through Eight of the Indictment omit the object of the alleged bribe. Defendants' request for a Bill of Particulars seeks clarification of those theories the government intends to proceed to trial on regarding the alleged *quid pro quo*.  Granting

Defendants' Motion for Bill of Particulars would limit the danger of Defendants' unfair surprise at trial as to what is the "material official action," and, more importantly, cure a potential violation of Defendants' due process rights of otherwise having to go to trial on a theory not advanced by the Grand Jury as set forth in the Indictment and/or in violation of the Statute of Limitations.

### III.    The Indictment Fails to Provide Adequate Information Regarding the Allegations of Nondisclosure.

Count Three of the Indictment alleges that Defendants committed honest services fraud "through concealment of material information" and bribery in exchange for "material official actions" taken by Mr. Pierce. Doc. 1, ¶¶ 15, 17, 59, 62.  The Indictment, however, fails to articulate the substance of the material information that was concealed, how or why this information should have been disclosed, and the material official actions undertaken by Mr. Pierce.

Paragraphs 15 and 17 (Conspiracy), 59 (Federal Program Bribery), and 62 (Honest Services Fraud), allege criminal conduct on the basis of concealment.  In *Skilling v. United States*, 561 US 358, 130 S. Ct. 2896 (2010).  It appears the Supreme Court eliminated the ability to convict people for Honest Services Fraud based on concealment. *Id at* 409.  The court held that this was vague.  *Id* at 408; *United States v. Garrado,* 713 F.3d 895, 998 (9th Cir. 2013).  The Defendants need to know the basis on why the prosecution is still proceeding in this case on a concealment theory.  *Id* at 414.

Courts recognize that where an indictment could cover multiple false or fraudulent statements, a bill of particulars is appropriate.  For example, in *United States v. Trie*, the court held that:

> A defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against or which contributors may be witnesses against him at trial when the government knows precisely the statements on which it intends to rely and can easily provide the information…The government must provide information as to exactly what the false statements are, what about them is false, who made them, and how Mr. Trie caused them to be made.

21 F. Supp. 2d 7, 21 (D.D.C. 1998); *see also United States v. Risk*, 672 F. Supp. 346, 360 (S.D. Ind. 1987) (government was ordered to disclose portions of a bank report that were alleged to be and that the government intended to prove were false); *United States v. Konefal*, 566 F. Supp. 698, 703 (N.D.N.Y. 1983) (government ordered to disclose which statements were false and which material facts were concealed); *United States v. McCoy*, 492 F. Supp. 540, 545 (M.D. Fl. 1980) ("The defendant is entitled to a bill of particulars setting forth each false and fraudulent pretense and representation described generally in the indictment.") (citation omitted).

In the instant case, it has become increasingly difficult for Defendants to prepare for trial given the broad generic allegations alleged in the Indictment (*i.e.,* "concealed information," "material official actions," "conduit," and "corruptly"). The discovery provided to date does not clarify the Indictment allegations. Thousands of pages of ACC records alone have been disclosed in this case. Indeed, the government's expert went through at least 13 different ACC dockets that were pending before the ACC during the alleged conspiracy period. It is impossible to determine which, if any, of the actions undertaken by Mr. Pierce during his time on the ACC the government intends to assert was the result of a bribe. Defendants must be given this information in order to be able to

adequately prepare for trial.

**IV.    Count Two of the Indictment is Duplicitous.**

"Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976).

Count Two, ¶ 57 of the Indictment states:

> From in or about August 2011[1] to in or about February 2013, in the District of Arizona and elsewhere, defendant GARY LEONARD PIERCE, being an agent of the ACC, a political subdivision within the State of Arizona, which received benefits of $10,000 in the one-year period from in or about January 2011 to in or about December 2011, and received benefits of $10,000 in the one-year period from in or about January 2012 to in or about December 2012, from federal programs involving a grant, contract, subsidy, loan, guarantee, insurance and other forms of federal assistance, did corruptly solicit, demand, accept, and agree to accept something of value intending to be influenced and rewarded in connection with the business, transaction, and series of transactions of such state government involving something of value of $5,000 or more: namely, defendant GARY LEONARD PIERCE, knowingly and willfully, solicited, accepted and agreed to accept money, ultimately totaling $31,500, **and** solicited real property valued at approximately $350,000, from defendant JAMES FRANKLIN NORTON, a retained lobbyist for Johnson Utilities, LLC, intending to be influenced and rewarded in connection with matters Johnson Utilities, LLC, had pending before the ACC, including allowing defendant GEORGE HARRY JOHNSON's personal income tax expenses to be reimbursed, and paid for, by payments made by the Utility's customers, and allowing a significant increase in Johnson Utilities, LLC's wastewater division's revenues through a rate base increase, and defendants GEORGE HARRY JOHNSON, JAMES FRANKLIN NORTON and SHERRY ANN PIERCE

---

[1] Count Two is a substantive count, not a conspiracy count.  A substantive count can be dismissed for violating the statute of limitation in a case involving both conspiracy and substantive counts.  *See United States v. FedEx Corp.*, No. C14-00380 CRB, 2016 WL 1070653 (N.D. Cal. Mar. 18, 2016) (court dismissed substantive counts. (Defendants alleged the substantive counts were time-barred pursuant to 18 U.S.C. 3282).  *Id* at *16

11

did knowingly and intentionally aid the commission of the offense by routing payments and acting as a conduit of the money to defendant GARY FRANKLIN PIERCE in order to hide the true nature and purpose of the payment of the money. All in violation of Title 18, United States Code, Sections 666(a)(1)(B).

Doc. 1 (emphasis added).

Thus, Count Two includes two separate crimes: one for a possible real estate transaction; and, one involving compensation paid to Mrs. Pierce. Accordingly, a conviction could result from two distinct fact patterns. As such, it is duplicitous. *UCO Oil Co.*, 546 F.2d at 835. The government is required to elect or identify which is the substantive charge when a count is duplicitous and may elect the charge upon which it seeks to go forward. Alternately, the government is required to dismiss the duplicitous charge.

Moreover, Defendants do not know under what "theory" the real estate email is set forth in the Indictment because Counts Two through Eight do not seem to adhere to the statute of limitation's five year period. *See* 18 U.S.C. § 3282. The compensation paid to Mrs. Pierce occurred in December 2011. The real estate email was sent more than five years prior to the date of the Indictment. Doc. 1, ¶ 54.

## V. The Indictment Fails to Provide Sufficient Information Regarding the "Official Actions" Undertaken by Mr. Pierce.

In *United States v. Menendez*, U.S. Dist. LEXIS 11737 (D.N.J. Jan. 24, 2018), the court granted a judgment of acquittal because, based on the official acts complained of, a rational juror could not find that defendants' actions were part of an alleged *quid pro quo*. *Id* at *40-52 *citing United States v. Inzunza,* 638 F.3d 1006 (9th Cir. 2011).

In this case, Defendants cannot adequately prepare their defenses because the Indictment uses the generic description, "material official actions." Doc. 1, ¶¶ 59, 62.

Defendants need clarification of what the government means by the phrase "material official actions" in order to identify a cognizable theory under which the government is proceeding against them. Adding to Defendants' confusion is the government's Expert's Report which identifies various actions by Mr. Pierce.

In *U.S. v. Menendez*, 2018 U.S. Dist. LEXIS 11737 (D. NJ Jan. 24, 2018), the court granted a judgment of acquittal to official acts that were not in close proximity to benefits confirmed by Senator Menendez. Judge Walls noted that the benefits conferred on a politician and the official acts were tenuous (a rational juror could not find that Menendez and Malgen were aware of the term of the alleged *quid pro quo*).

**VI.   Specific Items of Disclosure Sought by Defendants' Motion for Bill of Particulars.**

In order to reasonably prepare for trial and prevent any unfair surprises, Defendants seek the following list of specific items of disclosure from the government:

1.   What date is the conspiracy alleged to have started?

2.   Upon what theory(ies) does/do the government rely to charge Defendants with acts prior to September 28, 2011?

3.   What are the "official actions" as set forth in Count One, ¶15?

4.   What are the specific actions referred to by the government in Indictment Count Two's reference to "material official actions?"

5.   What is the material information the government alleges was concealed?

6.   What is the theory of disclosure:  i) what information should have been disclosed that was not; and ii) how should the information have been disclosed; iii) what is the theory of why there has been no disclosure?

7.      For each Count of the Indictment, what is the alleged *quid pro quo*?

8.      For Counts 1- 8 of the Indictment, identify all theories of liability against each Defendant.

9.      For Count Two, upon which criminal act does the government seek to proceed against Defendants?

### CONCLUSION

Ironically, while the government's Indictment alleges nondisclosure by Defendants, a review of the Indictment shows nondisclosure by the government.  The government's Indictment is crafted to mask the date of the conspiracy in an attempt to involve the August 13, 2011, ACC meeting prior to an alleged conspiracy ever having occurred.  Many of its most crucial allegations (*i.e.* "material official actions" and false representations) are merely legal conclusions leaving Defendants to merely guess as to what charges are actually being claimed against them.  Defendants do not seek wholesale disclosure of the government's evidence.  Their requests for information are narrowly drawn to merely elicit specification of the Indictment's allegations that must be known to the government and could have readily been disclosed to Defendants but were omitted from the Indictment.  The granting of Defendants' requests for information is necessary to enable Defendants to effectively prepare their defense and to avoid surprise at trial.  For all of the above-stated reasons, the Court should grant Defendants' Motion for Bill of Particulars.

### EXCLUDABLE DELAY

It is expected that excludable delay may occur under the Speedy Trial Act 18 U.S.C. § 3161(h1D) as a result of this motion.

14

1   RESPECTFULLY SUBMITTED this 22nd day of March 2018.

2                                   MATHEW & ASSOCIATES

3                                   By: /s/ Ivan K. Mathew

4                                       Ivan K. Mathew
                                        Attorneys for *Defendant James Norton*
5

6                                   PATRICIA A. GITRE, P.L.C.

7                                   By: /s/ Patricia A. Gitre *(w/permission)*

8                                       Patricia A. Gitre
                                        Attorneys for *Defendant Gary L. Pierce*
9

10                                  GALLAGHER & KENNEDY, P.A.

11                                  By: /s/ Woody Thompson  *(w/permission)*
                                        Woody Thompson
12                                      Hannah H. Porter
                                        Attorneys for *Defendant George H. Johnson*
13

14                                  ASHLEY D. ADAMS, P.L.C.

15                                  By: /s/ Ashley D. Adams   *(w/permission)*
                                        Ashley D. Adams
16                                      Attorneys for *Defendant Sherry A. Pierce*

17

18  ORIGINAL e-filed and COPY of the foregoing
    served via the CM/ECF System or U.S. Mail on
19  March 22, 2018, to:

20
    Elizabeth A. Strange, U.S. District Attorney
21  Frederick A. Battista, Assistant U.S. Attorney
    Frank T. Galati, Assistant U.S. Attorney
22  Two Renaissance Square
    40 N. Central Ave., Ste. 1200
23  Phoenix, Arizona 85004

24

25

26

                                   15

Patricia A. Gitre
Patricia A. Gitre, P.L.C.
801 N 1st Avenue
Phoenix, AZ 85003
Attorneys for *Defendant Gary L. Pierce*

Woodrow Thompson
Jay S. Volquardsen
Hannah H. Porter
Gallagher & Kennedy, P.A.
2727 East Camelback Rd
Phoenix, AZ 85016-9225
Attorneys for *Defendant George H. Johnson*

Ashley D. Adams
Ashley D. Adams, P.L.C.
8245 N. 85th Way
Scottsdale, AZ 85258
Attorneys for *Defendant Sherry A. Pierce*

/s/ DD Waldron