IVAN K. MATHEW (SBN: 011610)
SUSAN TURNER MATHEW (SBN: 012916)
**MATHEW & ASSOCIATES**
6245 N. 24th Parkway, Suite 207
Phoenix, Arizona 85016
Telephone: (602) 254-8088
ikmathew@mathewlaw.com
satmathew@mathewlaw.com

Attorneys for Defendant *James Norton*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>James Franklin Norton, *et al.*,<br><br>Defendants. | No. CR-17-00713-PHX-JJT (JZB)<br><br>**JOINT MOTION TO DISMISS BASED ON FIRST AMENDMENT GROUNDS**<br><br>**(**Assigned to the Hon. John J. Tuchi)<br><br>*(Oral argument requested)* |

Defendants, represented by undersigned counsel, (collectively "Defendants"), respectfully request this Court dismiss the Indictment of this matter as it violates the First Amendment. U.S. CONST. amend. I.

**The Statutes at Issue**

1. The Honest Services Fraud Statute provides:

For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services. 18 U.S.C. 1346

2. The Federal Program Bribery Statute provides:

a) Whoever, if the circumstance described in subsection (b) of this section exists—

(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—

    (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—

      (i) is valued at $5,000 or more, and

      (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or

    (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more; or

  (2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;

b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

c) This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business. 18 U.S.C. 666 (a)(b)(c).

**The First Amendment Protects Lobbying and Political Consulting as Protected Speech**

  George Johnson is a large developer in the East Valley. He also owns a water utility company called Johnson Utilities. Jim Norton is a lobbyist. Sherry Pierce is a highly-regarded political figure in Republican politics.

  In 2011 through 2013, Jim Norton was a principal in R&R Partners, a large public relations and lobbying entity. At that time, Sherry Pierce was active in the Arizona Republican Party and was the president of the East Valley Republican Women's Organization. She has worked for Congressman Matt Salmon and Congressman Andrew Biggs.

  Local political activities are important goals to a developer. It was such an important goal that George Johnson sought assistance in identifying and lobbying for political goals compatible with his company's interests in the East Valley. To this regard, in 2011,

Mr. Johnson sought the assistance of Jim Norton with organizing a grass-roots campaigns. He also paid Kelly Norton, who in turn sought the assistance of Sherry Pierce. The fact that Sherry Pierce is the wife of Gary Pierce, an Arizona Corporation Commissioner, is of no relevant consequence, as George Johnson and his political consulting team were exercising their First Amendment rights in seeking to maintain the unincorporation status of the towns in the East Valley. Under the Constitution, the government may enact no law that may abridge Defendants' rights of free speech. *Citizens United v. Federal Election Com'n*, 558 U.S. 310, 336 (2010) ("The First Amendment provides that 'Congress shall make no law…abridging the freedom of speech.'").

**A. <u>The First Amendment and *Quid Pro Quo*</u>**

If the First Amendment has any force, it prohibits Congress from fining or jailing citizens, or associations of citizens, for simply engaging in political speech. *Buckley v. Valeo*, 424 US 1, 48-49(1976) ("the First Amendment right to 'speak one' mind…on all public institutions' includes the right to engage in 'vigorous advocacy'…'" including speech relating to political policy generally or advocacy of the passage or defeat of legislation) (quoting, in part, *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (citation omitted)).

"[G]overnmental interest in preventing corruption or the appearance of corruption…[i]s limited to *quid pro quo* corruption." *Citizens United*, *supra*, 558 U.S. at359; *see also McConnell v. Federal Election Comm'n*, 540 U.S. 93, 221 (2003) (citing, *inter alia*, *Buckley*, *supra*, at 26-28, 30, 46-48, 96 S. Ct. 612); *Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 497 (1985) ("The hallmark of corruption is the financial *quid pro quo*: dollars for political favors."). The fact that speakers may have influence over or access to elected officials does not mean that these officials are corrupt:

> Favoritism and influence are not…avoidable in representative politics. It is in the nature of an elected representative to favor certain policies, and, by necessary corollary, to favor the voters and contributors who support those policies. It is well understood that a substantial and legitimate reason, if not the only reason, to cast a vote for, or to make a contribution to, one candidate

> over another is that the candidate will respond by producing those political outcomes the supporter favors. Democracy is premised on responsiveness.

*McConnell*, *supra*, 540 U.S. at 297 (Kennedy, J., dissenting).

Reliance on a "generic favoritism or influence theory…is at odds with standard First Amendment analyses because it is unbounded and susceptible to no limiting principle." *Id.* at 296. "Independent expenditures do not lead to, or create the appearance of, *quid pro quo* corruption…**Ingratiation and access, in any event, are not corruption.**" *Citizens United*, *supra*, 558 U.S. at 360. [emphasis added] "When Congress finds that a problem exists, we must give that finding due deference; but Congress may not choose an unconstitutional remedy." *Id*., at 361. "The remedies enacted by law…must comply with the First Amendment; and, it is our law and our tradition that more speech, not less, is the governing rule. An outright ban on corporate political speech during the critical pre-election period is not a permissible remedy." *Id*. Categorical bans on speech that is not limited to preventing *quid pro quo* corruption are not allowed. *Id*.

Political speech is "'indispensable to decision-making in a democracy, and this is no less true because the speech comes from a corporation rather than an individual.'" *Citizens United*, *supra*, 558 U.S. at 439 (quoting *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 777 (1978); *see also Bellotti*, 435 U.S. at 77 (the worth of speech "does not depend upon the identity of its source, whether corporation, association, union, or individual"). Statutes cannot interfere with the "open marketplace" of ideas protected by the First Amendment. *Id*., at 354 (citations omitted); *N. Y. State Bd. of Elections v. Torres*, 552 U.S. 196, 208 (2008) ("The First Amendment creates an open marketplace where ideas, most especially political ideas, may compete without government interference.").

All speakers, including individuals and the media, use money amassed from the economic marketplace to fund their speech. The First Amendment protects the resulting speech, even if it was enabled by economic transactions with persons or entities who disagree with the speaker's ideas. *Citizens United*, *supra*, 558 US 310, 351 (citation omitted). "'[T]he First Amendment protects the right of corporations to petition legislative and administrative

bodies.'" *Id*., at 355 (quoting *Bellotti*, *supra*, 435 U.S. at 792). "Corporate executives and employees counsel Members of Congress and Presidential administrations on many issues, as a matter of routine and often in private. Lobbying and corporate communications with elected officials occur on a regular basis." *Citizens United* , *supra*, 558 U.S. at 355.

At the founding, speech was open, comprehensive, and vital to society's definition of itself; there were no limits on the sources of speech and knowledge. *Id*., at 353 (citations omitted). "When Government seeks to use its full power, including the criminal law, to command where a person may get his or her information or what distrusted source he or she may not hear, it uses censorship to control thought." *Id*., at 356. This type of control is unlawful. *Id*. "The First Amendment confirms the freedom to think for ourselves." *Id.*

Corruption can be combated by restrictions on political speech through use of bribery laws if "a *quid pro quo* arrangement [i]s prove[n]." *Id*., at 356-57. Independent expenditures, though, including those made by corporations, do not give rise to corruption or the appearance of corruption. *Id.* at 314 ("this Court concludes that independent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption.").

This presentation impinges upon protected political speech; thus violating the First Amendment. Accordingly, the statute is overbroad. The Supreme Court does "not hesitated to overrule decisions offensive to the First Amendment." *Id*., at 363. The Supreme Court's precedent regarding the First Amendment is to be respected unless the most convincing of reasons demonstrates that adherence to this rule puts one on a course that is sure error. *Citizens United*, *supra*, 558 U.S. at 362.

"Political speech is so ingrained in our culture that speakers find ways to circumvent campaign finance laws." *Id*., 558 U.S. at 364 (citing *e.g.*, *McConnell*, *supra*, 540 U.S. at 176-177). "Our Nation's speech dynamic is changing, and informative voices should not have to circumvent onerous restrictions to exercise their First Amendment rights. Corporations, like individuals, do not have monolithic views. On certain topics corporations may possess valuable expertise, leaving them the best equipped to point out errors or fallacies in speech

of all sorts, including the speech of candidates and elected officials." *Id*. The First Amendment does not permit Congress to make categorical distinctions based on the corporate identity of the speaker and the content of the political speech. *Id*.

Although the First Amendment allows prosecutions for lobbying activity and political speech when there is a showing of a *quid pro quo* linkage, in this case, there has been no showing of the required *quid pro quo linkage*. In *McDonnell v. United States*, the Supreme Court emphasized the requirement of a *quid pro quo* linkage in corruption cases. *McDonnell v. United States*, 579 U.S. ____, 136 S. Ct. 2355, 2365 (2016). The fact that George Johnson utilized Defendants Jim Norton, Kelly Norton and Sherry Pierce to lobby and gather information to assist his political goals merely demonstrates the exercise of his right of free speech; an act which precludes prosecution. The right to exercise free speech is not conditioned on an individual's spouse's employment. There are numerous couples where one spouse is a politician and another involved in governmental relations or affairs. Requiring one spouse be precluded from governmental employment, as the government seeks to do in this case, in order for another to exercise the right of free speech clearly violates the First Amendment. Consequently, the Indictment must be dismissed.

**Conclusion**

For the foregoing reasons, the Court should dismiss the Indictment, as it infringes upon First Amendment political speech.

**EXCLUDABLE DELAY**

It is anticipated that excludable delay pursuant to 18 U.S.C. 3161(h)(7)(A) may occur as a result of this Motion.

RESPECTFULLY SUBMITTED this 26th day of March, 2018.

MATHEW & ASSOCIATES

By: */s/ Ivan K. Mathew*
Ivan K. Mathew
Susan T. Mathew


Attorneys for *Defendant James Norton*

PATRICIA A. GITRE, P.L.C.

By: /s/ *Patricia A. Gitre (with permission)*
    Patricia A. Gitre
    Attorneys for *Defendant Gary L. Pierce*

GALLAGHER & KENNEDY, P.A.

By: /s/ *Woodrow Thompson (with permission)*
    Woodrow Thompson
    Hannah H. Porter
    Attorneys for *Defendant George H. Johnson*

ASHLEY D. ADAMS, P.L.C.

By: /s/ *Ashley D. Adams (with permission)*
    Ashley D. Adams
    Attorneys for *Defendant Sherry A. Pierce*

ORIGINAL e-filed and COPY of the foregoing served via the CM/ECF System or U.S. Mail on March 26, 2018, to:

Frederick A. Battista, Assistant U.S. Attorney
Frank T. Galati, Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Ste. 1200
Phoenix, Arizona 85004

Patricia A. Gitre
Patricia A. Gitre, P.L.C.
801 N 1st Avenue
Phoenix, AZ 85003
Attorneys for *Defendant Gary L. Pierce*

Woodrow Thompson
Hannah H. Porter
Gallagher & Kennedy, P.A.
2727 East Camelback Rd

Phoenix, AZ 85016-9225
Attorneys for *Defendant George H. Johnson*

Ashley D. Adams
Ashley D. Adams, P.L.C.
8245 N. 85th Way
Scottsdale, AZ 85258
Attorneys for *Defendant Sherry A. Pierce*

/s/ DD Waldron